IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DICISION

| | |
|---|---|
| MARK VALENTINE<br><br>   Plaintiff,<br><br>v.<br><br>PALOMA PARK, LLC.<br><br>   Defendant. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

# COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Mark Valentine ("Plaintiff"), by and through his undersigned counsel, and files this, his Complaint for Damages against Defendant Paloma Park, LLC ("Defendant") and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, and reasonable attorney fees against Defendant for violations of his rights under 42 U.S.C. § 1981 ("Section 1981").

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, venue is appropriate in this Court.

## PARTIES

4.

Plaintiff is an African-American citizen of the United States of America and is subject to the jurisdiction of this Court.

5.

At all times relevant, Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

6.

Defendant was an employer subject to Section 1981 at all times relevant to the claims asserted herein.

7.

Defendant may be served with process by delivering a copy of the summons and complaint to its Registered Agent, Jason Marion Dunn, 1030 Waverly Hollow Drive, Watkinsville, GA, 30677.

# FACTS

8.

Plaintiff began working for Defendant, on or about June 1, 2021, as an Expediter, but was promoted to Executive Chef.

9.

Soon after starting his employment, Plaintiff started to witness some actions from co-workers that made Plaintiff feel that they were being racist. For example, one of Defendant's Managers, Mark, approached Plaintiff, called him "boy", knocked his hat off his head, and told him that he needed to move his car "immediately." Plaintiff also noticed that in meetings, Managers would not respect him and would question everything that he said, which did not happen to the other managers, who were not black.

10.

As a result, Plaintiff reported those comments and actions to Charles Thompson ("Thompson"), a white Kitchen Manager who later became a Kitchen Supervisor and Accountant .

11.

On multiple occasions, Plaintiff also complained to Defendant's owner, Jason Dunn, who is asian, and the Director of Operations, Rebecca, who is white, that black employees were being mistreated.

12.

For example, Plaintiff specifically complained that black employees were being paid less than white employees, which Plaintiff knew because their wages were discussed in management meetings and because he talked to various employees.

13.

Plaintiff also complained several times to Dunn that he was being routinely spoken to by other employees such as Hank Sewell, a white General Manager, Jessa, a white Prep Manager, and Thompson, in a disrespectful manner, and that he was being talked to like that because he was black. Plaintiff believed this because white managers would not be talked to in the same way.

14.

In or about the beginning of 2022, Plaintiff also complained to Sewell, Thompson, and Dunn about a situation in which a black employee was supposed to be promoted to manage the salad station, but a white employee named Rose was hired from outside the company and took the position instead. Rose had no experience. Plaintiff specifically complained that the black employee was being overlooked because he was black.

15.

Rose ended up being terminated for performance issues.

16.

Sewell and Thompson then told Plaintiff that they needed employees to cover that position, which occurred until another white employee named Jack was promoted to the position. Plaintiff once again complained to Sewell, Thompson, and Dunn that it did not make sense that Jack was promoted to the position when there were black employees who already had experience performing the job duties that Plaintiff had recommended.

17.

On numerous occasions, including November 1, 2021, Thompson told Plaintiff that he would never be respected as an Executive Chef because he is black.

18.

Thompson also specifically told Plaintiff that Jessa treated him in a disrespectful way because he was black.

19.

Plaintiff reported to Dunn multiple times that he believed that Jessa treated him disrespectfully because of his race.

20.

The only thing that ever happened to Jessa was that she would be temporarily muted on GroupMe chats when she would be disrespectful to Plaintiff.

21.

In or about late August or early September 2022, this disrespect developed into a written online argument between the two where Plaintiff threatened to report Jessa for repeatedly drinking on the job and going to a bar down the street to drink while on shift.

22.

The next day, Dunn and Sewell came to Plaintiff and told him that Jessa had accused him of sexually harassing her and blackmailing her.

23.

Plaintiff denied sexually harassing Jessa, showed Sewell and Dunn the messages between the two, and explained that he had just threatened to report her for drinking on the job.

24.

Sewell and Dunn then told Plaintiff that they knew that Jessa's allegations were false and that Plaintiff should go back to work and avoid Jessa.

25.

Then, on or about September 12, 2022, Thompson came into the Kitchen and called Plaintiff a "coon" and a "nigger" in front of other employees.

26.

Plaintiff complained of the use of those slurs that day to Sewell.

27.

Thompson was made to leave by Assistant General Manager Carlos.

28.

Defendant retrieved a video of what happened from their surveillance system the next day, September 12, 2022.

29.

Thompson returned to the restaurant on September 12, 2022, as well, and Sewell threatened to call the police if he did not leave.

30.

When Plaintiff went to leave work that day. Sewell told Plaintiff to go straight to his car because Thompson was "still out there" with some of his friends.

31.

Even though Thompson had not left, the police were not called.

32.

Plaintiff was then placed on administrative leave and was told by Dunn and Sewell that the reason was Jessa's reports of harassment.

33.

Plaintiff was informed that while he was on leave, Defendant gave all of the black employees raises and told them that the reason they had not received raises was because of Plaintiff.

34.

Then, on September 27, 2022, Dunn terminated Plaintiff.

35.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, such reasons are pretext. Plaintiff was treated less favorably in the terms or conditions of employment than others outside of his protected class, i.e., individuals who had engaged protected activity under Section 1981.

## COUNT I: VIOLATION OF 42 U.S.C. § 1981: RETALIATION

36.

Plaintiff re-alleges paragraphs 8-35 as if set forth fully herein.

37.

Plaintiff is African-American and black in color.

38.

Plaintiff had an employment agreement with Defendant within the meaning of 42 U.S.C. § 1981, under which, inter alia, Plaintiff worked for Defendant, and Defendant compensated Plaintiff for work.

39.

Plaintiff engaged in protected activity under Section 1981 when he complained about being called racial slurs and racist treatment.

40.

Defendant terminated Plaintiff approximately 15 days after he engaged in protected activity by reporting racial slurs.

41.

There was a causal connection between Plaintiff's protected conduct and his termination.

42.

Defendant violated Plaintiff's rights under 42 U.S.C. § 1981.

43.

Plaintiff is a member of a protected class.

44.

Defendant is liable for terminating Plaintiff.

45.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

46.

Plaintiff has suffered lost wages and emotional distress, as a result of Defendant's termination of him.

47.

As a direct and proximate result of Defendant's violations of 42 U.S.C. §

1981, Plaintiff has been made the victim of acts that have adversely affected his psychological and physical well-being.

48.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

49.

Defendant acted with malice and in reckless indifference to Plaintiff's federally protected rights. Plaintiff is entitled to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(A)   Grant Plaintiff a trial by jury as to all triable issues of fact;

(B)   Grant Plaintiff damages for lost wages and benefits and prejudgment interest thereon;

(C)   Grant Plaintiff general damages for mental and emotional suffering caused by Defendant's unlawful conduct;

(D)   Grant declaratory judgment declaring that Plaintiffs' rights have been violated;

(E)   Grant Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(F) Grant Plaintiff reasonable attorneys' fees and expenses of litigation;

(G) Grant injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(H) Award Plaintiff such further and additional relief as may be just and appropriate.

This 15th day of January, 2024.

**BARRETT & FARAHANY**

/s/ V. Severin Roberts
V. Severin Roberts
Georgia Bar No. 940504
Attorney for Plaintiff

P.O. Box 530092
Atlanta, GA 30353
(404) 214-0120
(404) 214-0125 facsimile
severin@justiceatwork.com